**In re Robert B. QUICK, Jr. & Linda L. Quick, Debtors.**

**Bankruptcy No. 87–01186.**

United States Bankruptcy Court, W.D. Virginia, Lynchburg Division.

Oct. 23, 1992.

Laurence P. Morin, Lynchburg, VA, for debtors.

Stephen U. Baer, Asst. U.S. Atty., Roanoke, VA, Helen P. Parrish, Trustee, and Angelo A. Frattarelli, Trial Atty., Washington, DC.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Chief Judge.

Before the court is a motion filed by the debtors, Robert B. and Linda L. Quick, to determine the amount and dischargeability of the claim filed in their chapter 7 case by the Internal Revenue Service.

### FACTS

The debtors filed a joint petition under chapter 13 of the Bankruptcy Code on October 30, 1987. Their chapter 13 plan was confirmed on December 10, 1987 and subse-

quently, on May 11, 1989, a modified plan was confirmed.

The Internal Revenue Service filed a timely proof of claim on February 17, 1988 in the amount of $30,859.68, and amended it on April 27, 1988 to reduce the amount to $6,675.89. Of that amount, $6,146.29 represented unpaid tax for the year ended 12/31/86, $314.47 was for interest that had accrued through the date the chapter 13 petition was filed, and $215.13 represented a penalty. On January 18, 1989 the chapter 13 trustee classified $6,460.76 of the Internal Revenue Service claim as an unsecured priority claim and $215.13 as an unsecured claim without priority.

On August 9, 1991 the debtors converted their case to chapter 7 and on November 19, 1991 they were granted a discharge. The events leading to the conversion are described by debtors' counsel as follows:

> During July, 1991, it became apparent that the debtors could no longer maintain their plan payments, and that it would be necessary that they convert their case to chapter 7. However, prior to converting their case, they contacted the Trustee to determine the balance needed to pay the claim of the IRS in full. The debtors tendered a payment through counsel of $900.00 on July 31, 1991; then, on August 5, 1991, an additional $47.88 was paid to the trustee to "cover the balance due on Commissions and Priority claims in the above-captioned matter". It was the debtors' uncontradicted intention to pay the IRS claim in full prior to converting their case to chapter 7.

Between June 22, 1989 and August 23, 1991, the chapter 13 trustee distributed a total of $6,424.07 to the Internal Revenue Service, leaving a balance due of $36.69 on the $6,460.76 unsecured priority portion of its claim. No payments were made on the $215.13 portion which had been designated a general unsecured claim prior to the conversion to chapter 7. And apparently no payments were made to unsecured creditors after the debtors converted their case.

On or about April 7, 1992, the IRS served a "Notice of Levy" on the debtors asserting tax liability as follows:

| Type of tax | Tax period | Tax due | "Statutory additions" | Total |
| --- | --- | --- | --- | --- |
| 1040 | 12/31/86 | $326.78 | $3,520.38 | $3,847.16 |

Debtors' counsel points out that the amount of "tax due" listed on the Notice appears to represent the alleged unpaid balance of the Internal Revenue Service's amended claim, although that amount exceeds the total of the unpaid $36.69 priority part of the Internal Revenue Service's claim and the $215.13 general unsecured portion. The "statutory additions" figure of $3,520.38 may represent the amount of interest and penalty which would have accrued since the debtors filed their chapter 13 petition on the original amount of the Internal Revenue Service's amended claim.

On April 15, 1992, the Internal Revenue Service applied the debtors' 1991 income tax overpayment of $404.07 to the $3,847.16 claimed as owing on the Notice, thereby reducing the unpaid tax liability for 1986 to zero, but leaving a balance of $3,438.92 owing.

In response to the Internal Revenue Service's action, the debtors filed a motion to reopen their chapter 7 case. The motion was granted on April 16, 1992, and the Internal Revenue Service has taken no further collection action. On April 20, 1992 the debtors filed their motion requesting this court to determine the balance due on the Internal Revenue Service claim and whether it is dischargeable.

### DISCUSSION

■ Because the debtors' 1986 tax return was due within three years of the filing of their bankruptcy petition, and because the liability was assessed within 240 days of the filing of the petition, the tax and interest portions of the amended Inter-

nal Revenue Service claim which was filed in the chapter 13 proceeding (totalling $6,460.76) were correctly classified as an unsecured priority claim under 11 U.S.C. § 507(a)(7). Pursuant to 11 U.S.C. § 1322(a)(2), in order to be confirmed, a chapter 13 plan must provide for the full payment of all claims entitled to priority under section 507. Because a discharge is not issued in a chapter 13 proceeding until all payments called for under the plan have been made,[1] this debt would have had to have been paid in full before the debtors could have received a discharge of the obligation.

The penalty portion of the amended IRS claim (which totalled $215.13) was classified in the chapter 13 proceeding as an unsecured claim without priority. Pursuant to 11 U.S.C. § 1328(a), any part of this obligation which the plan did not provide to be paid was dischargeable in the chapter 13 proceeding, if all of the payments required by the chapter 13 plan were made. In this case, the debtors' chapter 13 plan originally proposed paying 30 percent of the amount owed on nonpriority unsecured claims, including the $215.13 penalty portion of the IRS claim.

In general, many kinds of debts that are dischargeable in a chapter 13 proceeding are not dischargeable in proceedings under chapters 7, 11 and 12.[2] 11 U.S.C. § 727 sets out which debts can be discharged in a chapter 7 proceeding, and contains a long list of nondischargeable obligations. Section 727(b) excepts from discharge debts that are specified in section 523; section 523(a)(1) excepts from discharge taxes "of the kind and for the periods specified in section 507(a)(7);" and subparts (A) and (G) of section 507(a)(7) include taxes on income and penalties thereon "that are in compensation for actual pecuniary loss." Prepetition interest on income tax liability is considered a nondischargeable penalty for purposes of section 507(a)(7)(G).[3] In addition, section 523(a)(7) makes other tax penalties, including those that are not in compensation for a pecuniary loss, nondischargeable if the underlying tax with respect to which the penalty is imposed is nondischargeable.[4]

When the debtors in this case converted from a chapter 13 proceeding to one under chapter 7, one effect was to make the $36.69 portion of the Internal Revenue Service's priority unsecured claim which was not paid prior to conversion a nondischargeable obligation pursuant to section 523(a)(1). Similarly, upon conversion, the unpaid $215.13 penalty portion of the IRS claim became nondischargeable pursuant to section 523(a)(7). And the debtors do not seriously dispute this. The more difficult question before the court is whether the Internal Revenue Service can recover postpetition interest and penalties on those nondischargeable debts.

1. Pursuant to 11 U.S.C. § 1328(b), the so-called chapter 13 "hardship discharge" provision, a court may grant a discharge to a chapter 13 debtor who has not completed payments under a plan under certain circumstances. Unlike the discharge granted after completion of a chapter 13 plan, however, a "hardship discharge" does not discharge those unsecured debts specified in section 523(a), which includes tax obligations. See 11 U.S.C. § 1328(c)(2).

2. *See* 11 U.S.C. §§ 1141(d) and 1228(a).

3. *See, e.g., Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 907, 11 L.Ed.2d 772 (1964) (holding that under the Bankruptcy Act, pre-petition interest was entitled to the same priority treatment as the principal amount of the tax); *In re Garcia,* 955 F.2d 16, 17 (5th Cir.1992) (nothing in the language of the Bank-

ruptcy Code or its legislative history indicates that Congress intended to change the treatment of prepetition interest); *In re Mark Anthony Const., Inc.,* 886 F.2d 1101, 1107–08 (9th Cir. 1989); *In re Larson,* 862 F.2d 112, 118–19 (7th Cir.1988); and *In re H.G.D. & J Mining Co.,* 836 F.2d 546 (4th Cir.1987), *affirming* 74 B.R. 122 (S.D.W.Va.1986). *C.f., In re Flo–Lizer, Inc.,* 916 F.2d 363, 366–67 (6th Cir.1990) (interest that accrued on postpetition taxes and penalties is entitled to first priority as an administrative expense in chapter 11 case).

Several of the cases also note that 26 U.S.C. § 6601(e)(1) provides that "[a]ny reference in [the Internal Revenue Code] to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."

4. *See, e.g., In re Burns,* 887 F.2d 1541, 1544 (11th Cir.1989).

Pursuant to 11 U.S.C. § 502(b)(2), unmatured interest is generally not allowed against the bankruptcy estate.[5] The disallowance of the payment of unmatured interest out of the assets of a bankruptcy estate has been called a "rule of administrative convenience and fairness to all creditors" that makes it possible to calculate the amount of claims easily and assures that creditors at the bottom rungs of the priority ladder are not prejudiced.[6] The "rule" is not absolute, however. For example, section 506(b) allows a secured creditor to recover postpetition interest when the value of the collateral is sufficient not only to satisfy the principal amount of the claim, but also to satisfy postpetition interest. Postpetition interest is also payable out of the assets of the bankruptcy estate if a debtor ultimately proves to be solvent.[7]

No provision of the Bankruptcy Code expressly states whether interest on tax claims is to be treated differently under section 502(b)(2).[8] Instead, two cases decided by the United States Supreme Court prior to the enactment of the Code in 1978 provide the basis for resolving this question.

In *City of New York v. Saper,* 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), the Supreme Court held that under the Bankruptcy Act, unsecured tax claims against a debtor bear interest only until the date the bankruptcy petition was filed. Because "there is nothing in the Code to suggest a rule contrary to that announced by the Supreme Court in *Saper,* it follows that the mere fact that it is a tax claim which is involved does not presuppose that such claim will be allowable to the extent it is for unmatured interest, nor that the rule is altered that interest stops running as of the date of the filing of the petition." 3

*Collier on Bankruptcy* ¶ 502.02[2][a], at pp. 502–37 (15th ed. 1992). For example, when the prepetition amount of a tax claim is paid in full in a chapter 13 proceeding, the trustee does not pay interest that would have accrued subsequent to the date the bankruptcy petition was filed.

The Supreme Court subsequently held in *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), however, that the *Saper* holding applied only to tax claims against the trustee in bankruptcy. *Bruning* involved a personal bankruptcy in which the funds realized from the liquidation of a debtor's estate were not sufficient to pay the prepetition tax liability in full. After his discharge, the Internal Revenue Service sought to collect not only the balance of the unpaid tax obligation and prepetition interest, but also interest which accrued postpetition. In *Bruning,* the Court expressly held that the "traditional rule which denies postpetition interest as a claim against the bankruptcy estate" did not apply to "discharge the debtor from *personal liability* for such interest." *Id.* at 362, 84 S.Ct. at 908 (emphasis added). The decision was premised on the fact that the tax obligations at issue were non-dischargeable, with the Court stating that, "Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy," and that "the general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts." *Id.* at 361, 84 S.Ct. at 908.

Two years later, the Court cited *Bruning* when it distinguished between holding a debtor personally liable for postpetition interest and allowing postpetition interest against a bankrupt estate:

**5.** "Section 502(b)(2) acknowledges the accepted and general rule that there is a suspension of the accrual of interest on claims as of the date of the filing of the petition." 3 *Collier on Bankruptcy* ¶ 502.02[2], p. 502–30 (1992 ed.)

**6.** *See Bruning v. United States,* 376 U.S. 358, 362, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964) and *In re Hanna,* 872 F.2d 829, 830 (8th Cir.1989).

**7.** *Hanna* at 831. ("But when concerns for administrative convenience and fairness are not present, postpetition interest will be 'allowed.'")

**8.** "There is no indication that tax claims, from the standpoint of unmatured interest, are to be treated differently under the Code." 3 *Collier on Bankruptcy,* ¶ 502.02[2][a], at p. 502–37 (15th ed. 1992).

It is clear that the interest-bearing quality of a debt is suspended, rather than extinguished, by the filing of a petition in bankruptcy. In certain circumstances ... the accrual of interest may continue during the period of bankruptcy administration.[9]

Subsequently, the Second and Third Circuits extended the *Bruning* holding to Chapter XI debtors under the Bankruptcy Act, holding that following confirmation of a plan, even though a tax debt is paid in full pursuant to the plan, the debtor nonetheless remains liable for interest accruing from the date of the filing of the Chapter XI petition until the date of the payment of the underlying tax debt pursuant to the plan. *In re Johnson Electric Corp.*, 442 F.2d 281 (2d Cir.1971) and *Hugh H. Eby Co. v. United States*, 456 F.2d 923 (3d Cir.1972). The Second Circuit reaffirmed *Johnson Electric Corp.*, in *In re Jaylaw Drug, Inc.*, 621 F.2d 524, 529 (2d Cir.1980), and extended the holding to postpetition penalties on prepetition tax claims.[10] (Though decided after enactment of the Bankruptcy Code, *Jaylaw* was decided under the Bankruptcy Act.) Similarly, the Third Circuit reaffirmed *Eby* and extended its holding to tax penalties in *Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242 (1980), which was also decided under the Bankruptcy Act.

▮▮▮ Subsequently, numerous cases decided under the Bankruptcy Code, including those decided by the four United States Courts of Appeals that have considered the issue, have followed *Bruning* by holding that the Internal Revenue Service may recover postpetition interest and penalties on *nondischarged* prepetition tax debts.[11] And the *Bruning* holding has been extended to cases in which the underlying prepetition debt is paid in full as part of a chapter 7 bankruptcy proceeding.[12] Several cases have expressly addressed whether the *Bruning* holding survived the enactment

9. *Nicholas v. United States*, 384 U.S. 678, 682 at n. 9, 86 S.Ct. 1674, 1678–79 at n. 9, 16 L.Ed.2d 853 (1966). The question before the Supreme Court in *Nicholas* was whether a superseding trustee in bankruptcy is liable for interest and penalties on federal taxes incurred by a debtor in possession during an arrangement under Chapter XII of the Bankruptcy Act. The Court held that the trustee was not liable.

10. In doing so, however, the court noted that: It is arguable that the extension of the *Bruning* principle to arrangements under Chapter XI was not quite so inevitable as we and the Third Circuit assumed. In ordinary bankruptcy there is a sharp distinction between the estate and the bankrupt. The estate, after payment of administration expenses, is distributed to creditors; the bankrupt ·emerges with none of the assets of the estate and continues with only exempt and after-acquired assets which had never formed part of it. In arrangements the situation is more complex. In some arrangements a major part of what had been the "estate" continues to remain in the hands of the arranged debtor. In such cases the rule that while post-petition interest cannot be collected from the "estate," it can be collected from the former debtor after the Chapter XI proceeding has terminated, may appear to be lacking in reality. *Id.* at 527. Nevertheless, courts have continued to apply *Bruning* in reorganization proceedings.

11. *See, e.g., In re Fullmer*, 962 F.2d 1463, 1468 (10th Cir.1992) ("Interest that accrues postpetition on a nondischargeable prepetition tax debt survives bankruptcy as a personal liability."); *In re Hanna*, 872 F.2d 829 (8th Cir.1989); *In re Burns*, 887 F.2d 1541, 1543 (11th Cir.1989) ("[W]e conclude that the post-petition interest on a nondischargeable tax debt is nondischargeable."); *United States v. River Coal Company, Inc.*, 748 F.2d 1103, 1106 (6th Cir.1984); ("The 'general rule' that a creditor is allowed interest on his debt only to the time a petition in bankruptcy is filed has no application to nondischargeable debts being asserted against the bankruptcy debtor and not against the bankruptcy estate.").

The United States Court of Appeals for the Fourth Circuit has not decided a case directly on point, although in *In re Twin Parks Ltd. Partnership*, 720 F.2d 1374 (4th Cir.1983), a case involving a judgment creditor decided under the Bankruptcy Act, the court stated as follows: This court has recognized its guiding principles in ruling that interest should not be awarded past the point a bankruptcy petition is filed, absent exceptional circumstances. [Citations omitted.] These exceptional circumstances are limited to cases where: (1) the debtor claiming bankruptcy protection later proves to be solvent, ...; (2) the property of the debtor continues to earn money; (3) the debt is not one discharged by bankruptcy [citing *Bruning*].

12. *See, e.g., Geving v. United States*, 93 B.R. 742, 743 (D.Wy.1986).

of the Bankruptcy Code in 1978, and answered affirmatively.[13]

The *Bruning* holding has not only been applied in liquidations under chapter 7 and reorganizations under chapter 11, but also to chapter 13 proceedings which are either dismissed prior to discharge, or are discharged under section 1328(b) before payment in full is made under the plan. *See In re Mitchell,* 93 B.R. 615, 618 (Bkrtcy. W.D.Tenn.1988) (Internal Revenue Service may properly claim in a new chapter 13 case, interest and penalties attributed to the period when a previous chapter 13 case which was later dismissed prior to discharge, was pending, even though the primary underlying tax obligation had been paid in the prior case) and *In re Putnam,* 131 B.R. 52, 53 (Bkrtcy.W.D.Va.1991) (interest and penalties which accrued after the filing of a chapter 13 petition in a prior case but which were not fully paid by the bankruptcy estate before the debtors were discharged under section 1328(b), were nondischargeable in a subsequently filed chapter 13 case.) Although there is apparently no decided case involving a conversion from a chapter 13 to a chapter 7 proceeding, there is no reason that *Bruning* should not provide the law applicable here. "When tax debts are *discharged,* postpetition interest and penalties will also be discharged. If the tax debt is within one of the enumerated exceptions and is not discharged, the *Bruning* case may be applied to postpetition interest and penalties making them collectible out of the debtor's after-acquired property." 3 *Collier on Bankruptcy* ¶ 523.06[12], p. 523–38 (15th ed. 1992).

Although the debtors acknowledge that the weight of authority is against them,[14] they nevertheless urge this court to rule against the Internal Revenue Service. They argue that they intended to pay all of the priority portion of the Internal Revenue Service claim which was owing on the date

that they filed their chapter 13 petition prior to their dismissal of that case, and that they failed to do so only because they were given an incorrect payoff figure. Arguably, even if the debtors had paid all of the priority portion of the Internal Revenue Service claim before they dismissed their case, they might still be personally liable for any accrued interest and penalties on that portion of the claim after dismissal. That issue is not before the court, however. In this case, neither the priority nor the nonpriority portion of the prepetition claim was paid in full prior to the dismissal of the chapter 13 case, and the claim was not discharged. *Bruning* therefore makes the debtors personally liable for postpetition interest and penalties that accrued while the chapter 13 proceeding was pending.

The Bankruptcy Code clearly makes certain claims dischargeable in a chapter 13 proceeding that are not dischargeable in one under chapter 7. Presumably this is so because Congress wanted to reward debtors who elected to reorganize instead of liquidate, thereby benefitting creditors. The *quid pro quo* for the more favorable discharge provisions, however, is completion of the chapter 13 plan. Nevertheless, the debtors argue that because the chapter 13 trustee classified the penalty portion of the Internal Revenue Service's pre-chapter 13 petition claim as dischargeable, it could not become nondischargeable after conversion of their case to chapter 7.

This court disagrees. In the chapter 13 trustee's Report on Claims Filed and Order which was filed in this case on January 18, 1989, the penalty portion of the Internal Revenue Service claim is correctly listed as a general unsecured claim without priority. The Report does not state that the penalty portion is dischargeable or otherwise describe it. And while it is correct that the 70% of that claim which was not required to be paid pursuant to the chapter 13 plan

---

**13.** *See In re Burns,* 887 F.2d 1541, 1543 (11th Cir.1989) and *In re Hanna,* 872 F.2d 829, 830–31 (8th Cir.1989).

**14.** The only case cited by the trustee that really holds otherwise, *In re Lottman,* 87 B.R. 32

(Bkrtcy.N.D.Ohio 1988), does not discuss *Bruning* and arguably misconstrues *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). *See* discussion of *Nicholas* at footnote 9 *supra.*

would have been dischargeable if a chapter 13 discharge had been granted, no such discharge was issued. Instead, as discussed above, upon conversion to a chapter 7 proceeding, the penalty portion of the claim became nondischargeable. The effect of 11 U.S.C. § 523(a)(7), which pursuant to 11 U.S.C. § 727(b) is applicable in a chapter 7 proceeding, is to make a tax penalty nondischargeable if the tax to which it relates is nondischargeable, unless the event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition. The penalty at issue here appears to fall well within the three year period and relates to a nondischargeable tax debt.

The debtors also question how the amount of interest and penalty stated to be owing in the April 7, 1992 Notice of Levy was determined. The debtors assert that the Internal Revenue Service should have deducted the payments made during the pendency of the chapter 13 proceeding from the principal amounts which it used to calculate interest and penalty and believe that "statutory additions" of $3,520.38 could possibly be excessive given that the chapter 13 trustee paid the IRS $6,424.07 of its $6,675.89 prepetition claim. *Bruning* does not deal with the question of how postpetition interest and penalty should be calculated, or discuss whether postpetition payments made from the bankruptcy estate must be deducted from the principal amounts used for such calculations.[15] And counsel for the Internal Revenue Service did not address this issue at either the hearing or in the memorandum of law filed in this case.

An order will therefore be entered directing the Internal Revenue Service to show how the "statutory additions" claimed in the April 7, 1992 Notice of Levy were de-termined and, if postpetition interest and penalty were not calculated on the declining postpetition balance of the Internal Revenue Service claim, why deductions should not have been made for the payments made by the chapter 13 trustee. Unless resolved sooner, a hearing will be held at 11:00 a.m. on November 13, 1992 to address these matters.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is

### ORDERED

that counsel for the Internal Revenue Service appear at 11:00 a.m. on Friday, November 13, 1992 in Court Room 330, U.S. Courthouse, 1100 Main Street, Lynchburg, Virginia 24505 and explain and/or present evidence to show how the "statutory additions" were determined which are claimed in the Notice of Levy which was served on the debtors, Robert B. and Linda L. Quick, on or about April 7, 1992.

---

**15.** In *In re Mitchell,* 93 B.R. 615, 616 (Bkrtcy. W.D.Tenn.1988), the court states that the Internal Revenue Service acknowledged that during the pendency of any chapter 13 case it calculates for bookkeeping purposes only, but does not claim, interest and penalties and generally applies payments first to tax, second to penalty, and third to interest, with the oldest liability paid first. In the event a chapter 13 debtor successfully completes a plan and receives a discharge under 11 U.S.C. § 1322(a) by paying the Internal Revenue Services's claim in full, the IRS abates any remaining balance owed as a result of accrued interest and penalties so that the debtor's account will reflect no balance due. If the debtor's chapter 13 proceeding is dismissed, the Internal Revenue Service seeks to collect from the debtor the balance owing, including the interest and penalty calculated during the pendency of the bankruptcy.