**In re Dennis JALUFKA, Debtor.**

**Bankruptcy No. 93–41721F.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 17, 1995.

Stephen B. Bennett, Sherwood, AR, for Dennis Jalufka.

Raymond R. Mulera, Tax Div., U.S. Dept. of Justice, Washington, DC, and Paula J. Casey, U.S. Attorney's Office, Little Rock, AR, for I.R.S.

David D. Coop, Chapter 13 Trustee, North Little Rock, AR.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court is Dennis Jalufka's ("the debtor") Motion for Determination of Tax Liability filed on February 22, 1994. The Court held a hearing on the matter on November 8, 1994, and February 2, 1995.

### I. *Jurisdiction*

The Court has jurisdiction over this pending matter pursuant to 28 U.S.C. § 1334. Further, the above proceeding is a core proceeding within 28 U.S.C. § 157(b)(2). The following Memorandum Opinion constitutes findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### II. *Findings of Fact*

The Court has reviewed the debtor's bankruptcy files, and the exhibits and testimony from the November 8, 1994, and February 2, 1995 hearings.[1] Based on this review, the Court makes the following findings of fact.

On January 16, 1987, Dennis R. Jalufka and Donna Jalufka ("the debtors") filed a bankruptcy petition in case number 87–40091 pursuant to Title 11, Chapter 13 of the Bankruptcy Code. With this petition, the debtors filed a schedule of debts and proposed plan of dealing with creditors. The debtors also filed at this time a proposed plan of payment along with a plan narrative which listed the IRS as having a priority claim in the amount of $6,470.00 for 1985 personal income tax, and a priority claim in the amount of $6,577.00 for 1986 personal income tax. The plan listed an IRS levy on a bank account in the amount of $58.00 which was dated December 26, 1986.

On March 19, 1987, the IRS filed a proof of claim in bankruptcy case number 87–40091 in the amount $6,509.02 for the debtors' 1985 tax debt. This proof of claim listed $5,684.85 in taxes due as an unsecured priority claim; $426.69 in interest due as an unsecured priority claim; and a $397.48 penalty due as an unsecured general claim.

On April 10, 1987, the IRS filed a proof of claim in bankruptcy case number 87–40091 in the amount of $9,528.84 for the debtors' 1983 tax debt.[2] This proof of claim listed $5,684.85 in estimated tax due as an unsecured priority claim; $1,966.67 in interest due as an unsecured priority claim; and a $1,877.32 penalty due as an unsecured general claim.

On April 23, 1987, the debtors' Chapter 13 plan in bankruptcy case number 87–40091 was confirmed.

On July 15, 1987, the IRS filed a proof of claim in bankruptcy case number 87–40091 in the amount of $7,585.00 for the debtors' 1986 tax debt. This proof of claim listed $7,244.00 in taxes due as an unsecured priority claim, and a $341.00 penalty due as an unsecured general claim.

On July 31, 1987, the Chapter 13 trustee ("Trustee") filed the following motion:

### MOTION COMBINED WITH AN ORDER ALLOWING CLAIMS

Comes now the standing Chapter 13 Trustee who would show the Court that he

---

1. The Court may take judicial notice of the pleadings in its own case files. *See Annis v. First State Bank of Joplin,* 96 B.R. 917 (D.Mo.1987).

2. According to Plaintiff's Exhibit 6 in the November 8, 1994 hearing, the date of occupance of the tax debt was August 15, 1984.

has examined the proofs of claim. After such examination, the Trustee states that claims should be deemed allowed, or "not filed" as indicated below:

| NAME AND ADDRESS OF CREDITOR | AMOUNT | CLASSIFICATION | %CRED. |
|---|---|---|---|
| * * * | | | |
| INTERNAL REVENUE SERVICE ATTN KATHLEEN LOVE STOP 22–PO BOX 3778 LITTLE ROCK AR 72203 | $6,509.02 | PRIORITY CREDITOR ACCT: COMM: 85 TAX | 100 |
| INTERNAL REVENUE SERVICE ATTN KATHLEEN LOVE STOP 22–PO BOX 3778 LITTLE ROCK AR 72203 | $9,528.84 | PRIORITY CREDITOR ACCT: COMM: 83 TAX | 100 |
| INTERNAL REVENUE SERVICE ATTN KATHLEEN LOVE STOP 22–PO BOX 3778 LITTLE ROCK AR 72203 | $7,585.00 | PRIORITY CREDITOR ACCT: COMM: 86 TAX | 100 |

* * *

WHEREFORE, your Trustee prays that those claims which have been filed be deemed allowed for the purpose of distribution pursuant to the confirmed plan and other orders of this Court.

(signed)

AL Tenney, Trustee

Upon the foregoing motion, the court finds that the matters stated therein are true and, that:

Pursuant to Chapter 13 Rule 3007, the claims which have been filed as recited above shall be deemed allowed for the purpose of distribution unless objection is made by the debtor or other party in interest, within 30 days from the date of this order;

IT IS THEREFORE ORDERED, that a copy of this order and motion be mailed to the debtor(s) and to the debtor's attorney of record, and that the debtor(s) be given 30 days from the date of this order within which to examine the proofs of claim and to file a written objection to any claim which may be improper. The absence of a timely written objection will be deemed an approval by the debtor(s) of the claims as recited above and the claims shall be allowed for the purpose of distribution pursuant to the confirmed plan and other orders of this Court.

(signed)

James G. Mixon

Bankruptcy Judge

Date: 07/29/87

CC: AL TENNEY, TRUSTEE

DENNIS & DONNA JALUFKA

58 SOMERSET

NO LITLE (sic) ROCK AR 72118

STEPHEN BENNETT

3103 E KIEHL AVE

SHERWOOD AR 72116

There were no objections filed on behalf of the IRS to the priority claims allowed by the Trustee in the motion set forth above.

On June 11, 1992, the debtors filed a Motion for Hardship Discharge which stated:

* * * * * *

1. Debtors pray they be granted a hardship discharge pursuant to 11 U.S.C. Section 1328(b).

2. The debtors cite as grounds for this discharge the following: That Dennis Jalufka will be terminated from his employment within the next thirty (30) days and will be unable to continue payments; that in any event, the plan will run beyond sixty (60) months as a consequence of certain claims that have been filed; that the value as of the effective date of the plan of all property and payments distributed hereunder on account of each unsecured claim is not less than the amount that would have been paid on such claim if the estate had been liquidated pursuant to Chapter 7,

Title 11 U.S.C.; a modification of the plan is not practicable.

On July 2, 1992, a notice of a hearing on the matter was sent to the creditors and the debtors. On July 7, 1992, the Court filed a "Notice of Opportunity to Respond" to the motion for hardship discharge which was sent to all creditors, the Trustee, and the debtors' attorney.

On July 21, 1992, the Trustee returned to the IRS a $1,330.95 1991 tax refund check explaining that the debtors' bankruptcy case had been scheduled for a "hardship discharge" hearing.

There were no objections to the "hardship discharge" motion. Consequently, on July 29, 1992, the Court granted the debtors a hardship discharge in their Chapter 13 bankruptcy.

On August 26, 1992, and September 29, 1992, the Trustee issued final reports and accounts in the debtors' Chapter 13 bankruptcy. These reports stated that the IRS's priority claims of $6,509.02 for 1985 taxes, and $9,528.84 for 1983 taxes had been paid in full. The reports also stated that $360.70 had been paid on the 1986 tax priority claim, leaving $7,224.30 of the 1986 tax priority claim still due and owing.

On August 17, 1993, Dennis Jalufka filed a bankruptcy petition in case number 93–41721 pursuant to Title 11, Chapter 13 of the Bankruptcy Code. In the debtor's Chapter 13 plan, he listed $5,317.00 as an unsecured priority debt for the 1983 taxes, and $6,500.00 as an unsecured priority debt for the 1983 interest. The debtor listed the IRS as an unsecured priority creditor in the amount of $11,817.00 for the 1983 taxes and interest. The plan narrative reflected that this debt would be paid in full.

On September 17, 1993, the IRS filed a proof of claim in the second bankruptcy in the amount of $14,710.91 for the 1986 tax year. The proof of claim listed a secured claim in the amount of $1,312.00 for 1986 taxes; an unsecured priority claim in the amount of $11,112.63 for 1986 taxes and interest; an unsecured general claim in the amount of $52.98 for pre-petition interest; and an unsecured general claim in the

amount of $2,233.30 for penalty on unsecured priority claims.

The debtor's plan was confirmed on October 1, 1993.

On November 1, 1993, the debtor filed his 1983 income tax form which reflected that he owed income tax in the amount of $5,317.00 for 1983. The IRS accepted this amount as the amount actually owed for the 1983 tax year.

On November 29, 1993, the IRS filed an amended proof of claim in the amount of $21,024.76 based on the 1983 and the 1986 tax years. This proof of claim listed a secured claim in the amount of $1,312.00 for 1986 taxes, and stated that the IRS had a right of setoff against this amount. The proof of claim listed an unsecured priority claim of $5,184.90 for 1986 taxes; an unsecured priority claim of $5,927.73 in prepetition interest for the 1986 taxes; and an unsecured general claim of interest in the amount of $52.98 on the 1986 taxes.

The November 29, 1993 amended proof of claim listed no tax due for 1983 stating that these taxes were unassessed. For 1983, the proof of claim reflected a $3,655.35 unsecured priority claim for interest due on the 1983 taxes. Finally, the amended proof of claim listed an unsecured general claim based on penalties on unsecured priority claims in the amount of $4,891.80 for the tax years 1983 and 1986. The amended proof of claim did not delineate between the amounts of the penalties for 1983 or 1986.

The debtor filed the instant Motion for Determination of Tax Liability on February 22, 1994. On February 25, 1994, the Trustee filed a motion seeking allowance of the IRS's claim for a $14,767.98 priority claim for 1983 and 1986 taxes; a $1,312.00 secured priority claim for 1986 taxes; and a $4,944.78 unsecured original claim for the 1986 tax debt.

On November 8, 1994, this Court held a hearing at which time it accepted into evidence as exhibits (1) the March 19, 1987 proof of claim filed by the IRS in bankruptcy case number 87–40091; (2) the April 10, 1987 proof of claim filed by the IRS in bankruptcy case number 87–40091; (3) the July 15, 1987 proof of claim filed by the IRS in bankruptcy

case number 87–40091; (4) the July 29, 1992 Order granting the "hardship discharge"; (5) the August 26, 1992 Trustee's final report and account in bankruptcy case number 87–40091; (6) the Certificate of Assessments and Payments for Dennis R. and Marilyn D. Jalufka for the tax year 1983 [3]; (7) the Certificate of Assessments and Payments for Dennis R. and Marilyn Jalufka for the tax years 1985 and 1986; (8) the July 21, 1992 letter from the Trustee returning the 1991 income tax return to the IRS; (9) the September 17, 1993 proof of claim filed by the IRS for the tax year 1986 in bankruptcy number 93–41721; (10) the November 29, 1993 amended proof of claim for the 1983 and 1986 tax years in bankruptcy case number 93–41721; (11) a copy of IRS rule 73–305; (12) a copy of Dennis Jalufka's 1983 income tax return; and (13) a handwritten summary of taxes owed and payments made on the 1983 tax debt made by Donna Donaldson.

At the February 2, 1995 hearing the IRS called as a witness Ms. Donna Donaldson. Ms. Donaldson testified that she worked for the IRS as a bankruptcy specialist, and that she had computed the tax debts owed by the debtor for 1983 and 1986. She primarily based her testimony on Exhibit 13 which was her handwritten summary of taxes owed and payments made on the 1983 tax debts.

Ms. Donaldson testified that the debtor's tax for the 1983 tax year was $5,317.00. She stated that this figure was based on the debtor's 1983 income tax form which was filed in 1993, and which the IRS accepted as correct. She testified that the IRS accepted the debtor's own figure of $5,317.00 as the total amount of tax due. Ms. Donaldson testified that the amount of interest on the tax and the failure to file penalty which had accumulated from April 15, 1984, to the date of the debtor's August, 1993 bankruptcy was $7,867.19. She testified that the debtor also owed a $1,329.25 penalty for failure to timely file his 1983 return and a $1,329.25 penalty for failure to pay his 1983 taxes.[4] She testified that the total debt owed for the 1983 tax year was $15,842.69.

She testified that the IRS gave the debtor credit for $9,528.84 which had been paid by the Trustee on a monthly basis in the previous bankruptcy.[5] She stated that this $9,528.84 amount was applied toward the tax and interest as received.[6]

She testified that after giving the debtor credit for the $9,528.84 monthly payments which were applied toward tax, first, and interest, second, the debtor now owed $0 in taxes, $3,655.35 in unpaid interest[7]; $1,329.25 for the failure to file penalty; and $1,329.25 for the failure to pay penalty for a total owed of $6,313.85 for the 1983 tax year. She testified that the $3,655.35 in interest is listed on the proof of claim filed in the second bankruptcy as an unsecured priority claim. She testified that the failure to file ($1,329.25) and failure to pay ($1,329.25) penalties are included in the total amount of $4,891.80 unsecured general portion of the proof of claim filed in the second bankruptcy.

Ms. Donaldson recalculated the 1986 taxes at the February 2, 1995 hearing. Based on

---

**3.** Exhibit 6 also reflects that the IRS gave the debtor an extension until August 15, 1984, within which to file his income tax return.

**4.** Ms. Donaldson testified that this interest was charged on the tax and the penalty for failure to file. She stated that interest was not charged on the penalty for failure to pay as the tax has not actually been assessed due to the current bankruptcy.

**5.** Ms. Donaldson testified that IRS applied the payments of the Chapter 13 Trustee as they were received on a monthly basis. She testified that this method of payment was actually beneficial to the debtor. She stated that if the payments had not been credited as they were received, the debtor would have been charged interest on the full amount of the tax debt while it was due as opposed to being charged interest on a reduced tax debt every time a payment was credited.

**6.** Ms. Donaldson testified that IRS policy is to apply payments as they are received to tax, penalty, and interest. She stated, however, that the Chapter 13 Trustee's monthly payments from the first bankruptcy were applied to tax, interest, and penalty instead. She stated that she made the decision to apply the payments in this order because the 1983 taxes had not actually been assessed.

**7.** This figure is consistent with the IRS's proof of amended proof of claim based on unpaid interest, and on exhibits 13 and 14 which show Ms. Donaldson's calculations on the amount of interest due for the 1983 tax year.

her testimony, the Court holds that the debtor's 1986 tax debt is $14,544.36. This amount is composed of a $1,312.00 secured priority tax claim[8], a $5,184.90 unsecured priority tax claim[9], a $5,927.73 unsecured priority interest claim, a $52.98 unsecured general claim based on interest on assessed penalty claim, and a $2,066.75[10] general unsecured penalty claim. This leaves the debtor owing $14,544.36 for the 1986 tax year.[11]

At the February 2, 1995 hearing, the Court accepted as evidence Exhibit 14 which is a computer print-out of the monthly application of payments received by the IRS from the Trustee. The Court accepted as evidence Exhibit 15 which is a "Declaration and Calculation Prepared by Donna A. Donaldson." This document sets forth in writing portions of Ms. Donaldson's testimony. Where this document and Ms. Donaldson's testimony conflict, the Court credits Ms. Donaldson's testimony at the February 2, 1995 hearing.

III. *Conclusions of Law*

The debtor asserts that the amount and classifications of the claims based on the 1983 and 1986 tax debts filed by the IRS are in error.

A. *1983 Tax Debt*

In the first bankruptcy, the debtors treated the entire IRS claim for the 1983 taxes as a priority claim. The debtors' proposed plan of payment and plan narrative listed the IRS as having a priority claim in the amount of $6,577.00 for the 1986 personal income tax.[12]

The Trustee's July 31, 1987 motion set forth the IRS's claim based on the 1983 tax in the amount of $9,528.84 as a priority claim. The Trustee's motion which added the IRS's claim of $9,528.84 for the 1983 taxes, and $7,585.00 for the 1986 taxes as priority claims, received no objection by the debtor. There were no objections filed to the priority claims made by the Trustee on behalf of the IRS in the motion. The claims were allowed for the purpose of distribution pursuant to the confirmed plan and other orders of the Court.

Consequently, the "hardship discharge" of July 29, 1992, was entered after the classification in the plan of the 1983 and 1986 tax claims as priority claims, and after confirmation of the plan. Moreover, on August 26, 1992, and September 29, 1992, the Trustee issued final reports and accounts in the debtors' Chapter 13 bankruptcy. These reports stated that the IRS's priority claims of

8. Ms. Donaldson testified that the IRS has carried the $1,312.00 (which is the $1,330.95 amount of the refund check minus the interest given to the Chapter 13 Trustee earned) as a credit to the debtor since 1992. The debtor and the IRS have now agreed to a consent order which will setoff $1,320.00 against the claim based on the 1986 secured taxes.

9. This amount is composed of the taxes owed in the amount of $5,890.00 minus a $705.10 credit which is composed of credit from Chapter 13 Trustee's payments from the first bankruptcy, overpayments from the 1989 and 1990 tax years, and withholding credits.

10. This amount is composed of the $2,233.30 penalty listed within the $4,891.80 unsecured general claim on the amended proof of claim minus the $166.55 error which was made in calculating this interest. At the February 2, 1995 hearing, Ms. Donaldson stated that in calculating the 1986 taxes, she had found an error in favor of the debtor in the amount of $166.55. She stated that the proof of claim should be reduced accordingly. The $2,233.30 penalty amount is also listed on Exhibit 9 which is the IRS's original claim filed for the 1986 tax year in the debtor's second bankruptcy.

11. In her testimony Ms. Donaldson did not have the use of a calculator and she gave different gave several different versions of the same figures. In one section of her testimony she included the 1983 interest instead of the 1986 tax interest in her calculations. The figures used here by the Court are based on her entire testimony which the Court credits.

12. It can be noted that the IRS did file a proof of claim in the first bankruptcy in the amount $9,528.84 for the debtors' 1983 tax debt. This proof of claim listed $5,684.85 in estimated taxes due as an unsecured priority claim; $1,966.67 in interest due as an unsecured priority claim; and a $1,877.32 penalty due as an unsecured general claim. The debtors' plan was confirmed on April 23, 1987.

On July 15, 1987, the IRS filed a proof of claim in the first bankruptcy in the amount of $7,585.00 for the debtors' 1986 tax debt. This proof of claim listed $7,244.00 in taxes due as an unsecured priority claim, and a $341.00 penalty due as an unsecured general claim. Nonetheless, the debtors at all times treated the claims as priority claims.

$6,509.02 for 1985 taxes, and $9,528.84 for 1983 taxes had been paid in full. The reports also stated that $360.70 had been paid on the 1986 tax priority claim, leaving $7,224.30 of the 1986 tax priority claim still due and owing.

■ The principles of *res judicata* would apply in this case resulting in the 1983 and 1986 tax claims being priority claims in the debtors' first bankruptcy. Therefore, the IRS's claims for 1983 and 1986 as priority claims were not discharged by the "hardship discharge." *See* 11 U.S.C. sections 1322(a)(2), and 1328. If a debtor does not complete payments under a Chapter 13 plan and receives a hardship discharge pursuant to 11 U.S.C. § 1328(c), priority tax claims will not be discharged. *See* 11 U.S.C. §§ 1328(c)(2) and 523(a); *In re Quick*, 152 B.R. 902, 905 (Bankr.W.D.Va.1992).

Even if a "hardship discharge" does apply to unsecured general claims, in this case the "hardship discharge" would still not apply to the penalties. This case is distinctive on its facts. As previously stated, the penalties were treated as priority claims, not general claims.

The debtor also argues that pursuant to 11 U.S.C. section 507(a)(7)(A)(i), the IRS's amended unsecured priority claim · of $3,655.35 based on interest on the 1983 tax debt filed in the second bankruptcy should be a general unsecured claim making it dischargeable in the debtor's second bankruptcy. The debtor asserts that section 507(a)(7)(A)(i) makes any claim based on a tax debt a non-priority claim if such tax debt is for a taxable year ending before the date of the filing of the petition due including extensions after three years before the date of the filing of the petition.[13] The IRS argues that 26 U.S.C. section 6503 of the Internal Revenue Code and 11 U.S.C. section 108 of the Bankruptcy Code stayed the running of the three (3) year statute of limitations found in section 507(a)(7)(A)(i), and give the IRS an additional six (6) months to act.

■ The Court holds that the pursuant to section 507(a)(7)(A)(i), the IRS's claim based on the interest charged on the 1983 taxes debt is an unsecured priority claim. The Certificate of Assessments and Payments of Dennis R. and Marilyn D. Jalufka accepted into evidence as Exhibit 6 at the November 8, 1994 hearing states that the debtors were given an extension until August 15, 1984, in which to file their 1983 income tax return.[14] Thus, on August 15, 1984, the time started to run for purposes of section 507(a)(7)(A)(i). Two (2) years, five (5) months, and one (1) day elapsed until the debtor filed his first bankruptcy on January 16, 1987, and the three-year statutory limitation of 11 U.S.C. § 507(a)(7)(A)(i) was tolled. *See In re Wise*, 127 B.R. 20, 23 (Bankr.E.D.Ark.1991) (pursuant to 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b) and (i), the three-year· statutory period of time is tolled for the period of time a debtor's case is pending, plus six months). On July 29, 1992, the debtors received a hardship discharge. The three-year statutory limitation of 11 U.S.C. § 507(a)(7)(A)(i) starts to run again because (as the Court has previously held) pursuant to 11 U.S.C. § 1328(c) the hardship discharge does not discharge the taxes or interest. One (1) year and nineteen (19) days elapsed. The debtor filed his second Chapter 13 bankruptcy on August 17, 1993. The three year period is again tolled. Taking into consideration the tolling effect of the first bankruptcy and second bankruptcy, three (3) years, five (5) months, and twenty (20) days elapsed be-

---

**13.** 11 U.S.C. § 507 states:

(a) The following expenses and claims have priority in the following order: -

\*  \*  \*  \*  \*  \*

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
11 U.S.C. § 507(a)(7)(A)(i).

**14.** By letter dated February 17, 1995, the debtor objects to the use of the August 15, 1984 extension by arguing that this information was not part of the record. The Court rejects this argument as Exhibit 6 clearly shows that the debtor was given an extension within which to file his income tax return.

tween the time the 1983 return first became due, and the filing of the second bankruptcy. Based on the holding of *In re Wise* the IRS is accorded three (3) years and six (6) months in which to collect the taxes. Accordingly, the IRS's claim based on these taxes would be entitled to priority because the claim arose within the three (3) year and six (6) month period as interpreted by *In re Wise*.

### B. *1986 Tax Claim*

██ The debtor also asserts that the $9,528.00 paid by the Trustee in the first bankruptcy and the $1,312.00 income tax refund from 1991 should be applied in a lump sum directly to the $5,317.00 taxes owed for the 1983 tax year, and that any remaining amount should be applied to the 1986 tax year priority claims. The IRS argues that its application was correct based on its standard operating procedure. In support of its position, the IRS refers to Exhibit 11 which states:

> Partial payment of deficiencies; allocation to tax, penalty, and interest. A partial payment of assessed tax, penalty, and interest made by a cash method taxpayer with directions as to its application will be so applied. A partial payment on assessed deficiencies, or on deficiencies mutually agreed to but unassessed, received without instructions for its application will be applied to tax, penalty, and interest in that order, starting with the earliest period.

Ms. Donaldson testified that the policy of the IRS was to apply payments as they were received to the oldest tax, then penalty, and then interest. She testified that in this instance, she applied the payments as they were received to the oldest tax debt which was the 1983 tax debt. She stated, however, that because the 1983 taxes had not been assessed, she applied the payments as received to tax, interest, and penalties.

The Court will credit the IRS's evidence that the standard procedure of the IRS is to apply credits or payments to the oldest tax debt, first. In this case, the oldest debt was the claim based on the 1983 tax debt. There-

fore, the Court holds that the IRS was correct in applying the Trustee's monthly payments to the 1983 tax debt.

Moreover, the Court will credit Ms. Donaldson's testimony that this method of payment was actually beneficial to the debtor. She stated that if the payments had not been credited on a monthly basis, as they were received, the debtor would have been charged interest on the full amount of the tax debt from the date of occurrence to August 17, 1993, as opposed to being charged interest on a reduced tax debt every time a payment was credited. This method of payment was not prejudicial to the debtor.

### IV. *Conclusion*

The Court credits Exhibit 10, the IRS's amended proof of claim, and Ms. Donaldson's testimony regarding her calculations.

### *1983 Claims*

The Court holds that the IRS has an unsecured priority claim in the amount of $3,655.35 for the 1983 unpaid interest, and a general unsecured claim in the amount of $2,658.50 for the 1983 failure to file ($1,329.25) and failure to pay ($1,329.25) penalties.

### *1986 Claims*

The Court holds that the IRS has a secured priority claim in the amount of $1,312.00 for the 1986 taxes, and that this secured priority claim has been set off against a 1991 income tax refund in the amount of $1,312.00 resulting in there being no secured priority claim.

The Court holds that the IRS has an unsecured priority claim in the amount of $5,184.90 for the 1986 tax debt, and an unsecured priority claim in the amount of $5,927.73 for the 1986 interest.

The Court holds that the IRS has a general unsecured claim in the amount of $52.98 for interest on the 1986 assessed penalties, and a general unsecured claim in the amount of $2,066.75 [15] for the 1986 penalties.

---

**15.** This amount is composed of the $2,233.30 penalty listed within the $4,891.80 general unsecured claim on the IRS's amended proof of claim minus the $166.55 error which was testified to by Ms. Donaldson at the February 2, 1995 hearing.

Therefore, the debtor is given 20 days to amend his plan to include these claims as set forth in this Opinion.